JOHNSON WILLIAMS, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed April 15, 1913.

1. Where a question was propounded to the prosecuting witness on cross-examination, which was intended to prove good feeling between the defendant and the prosecuting witness at sometime previous to the alleged assault on the prosecuting witness and before the cause of the quarrel between them had arisen, it is not apparent that the trial judge erred in refusing to allow the question to be asked.

2. A trial judge in supervising the conduct of a trial and the examination of witnesses, commits no reversible error in refusing to allow defendant's attorney to order a witness to move his seat to a place designated by the defendant's attorney when no sufficient reason appears for a change of position by the witness.

3. The evidence examined and found sufficient to sustain the verdict.

Writ of error to the Circuit Court for Osceola County.

Judgment affirmed.

*Geo. F. Parker,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* for the State.

HOCKER, J.—In June, 1912, the grand jury of Osceola County presented an indictment against Johnson Williams, the plaintiff in error, who will be referred to as the defendant, charging him with an assault with intent to murder one Luther Wade. He was tried in December, 1912, the jury returning a verdict of "Guilty of an assault with intent to commit murder in the first degree as charged in the indictment." He was sentenced to the State Prison for ten years, and brings the judgment here for review.

It appears from the testimony of the State that one Sarah Young had some time before the 31st of March, 1912, lived with the defendant under color of a pretended marriage in Georgia; that he brought her to Kissimmee, Florida, where she cohabited with him until as she says he was very unkind to her and she quit him, claiming that he was a married man when she married him. She then began to associate with Luther Wade. This apparently excited the jealousy of the defendant. On Sunday morning, March 31st, 1912, Luther Wade took Sarah, who had agreed to marry him, to a house at Carroll's Still where his mother Charity Ivey was living. About 11 o'clock in the morning the defendant appeared at this house, as he says, looking for his wife Sarah, who he had previously stated was married to another man when he married her in Georgia. When he put his foot in

the door according to his testimony, Sarah ran out of the back door and he went around the house and then the mother of Luther or Luther himself got a bed slat and followed him, and then Luther got a smoothing iron which he threw at Johnson and struck him. Then Charity got an axe and threatened to kill him, running him about two hundred feet.

The State's witnesses tell a different story to the effect that Johnson came in the house armed with an axe and a stick and ran Luther Wade and the women out of the house, and then Luther got the smoothing iron and threw it at him, and perhaps struck him. The defendant then went off, and came back about eight or nine o'clock at night with a shot gun. Luther had in the meantime secured a rifle. Luther and his mother testify that at about that time they heard someone walking around the house, and that Luther went out with his rifle, and as he got out, the defendant, who was on or near the railroad track, a short distance from the house, shot Luther with a number of No. 4 shot, and that immediately after he was shot Charity went to the door and the defendant shot her with small shot. The defendant claims that when Luther came out he held his rifle in a threatening manner and he shot in self defense. This is the substance of the evidence as well as we can determine from the stenographer's notes incorporated in the bill of exceptions. Much of the testimony is incoherent and stated in such fashion as not to convey perfectly definite notions of what took place. It is clear, however, that the defendant after the quarrel in the morning armed himself with a shot gun and went back to the house where Wade staid, and that when Wade came out of the house he was shot by the defendant.

The first assignment of error is based on the refusal

of the trial judge to allow the defendant to ask Luther Wade the following question on cross-examination. "Now Luther, is it not a fact that you did visit these people Johnson Williams and Sarah Williams at their house in a friendly way?" The judge refused to permit this question on the ground that it was not a proper question on cross-examination. We cannot say the judge was in error. Even if Wade had visited Williams and Sarah when they were living together, we fail to see what that had to do with the feelings, motives or actions of Williams on the 31st of March, when Sarah had deserted him for Wade, and when Williams' blood was up because Wade had come between him and Sarah. We discover no error in the ruling of the judge.

The next assignment grew out of a remark of the judge. The defendant's attorney was cross-examining Wade, and said: "Now Luther—suppose—get up here and come to this table." The judge said: "I am not going to let him go around the table, you can ask him any question you want to." This was excepted to. Undoubtedly a trial judge has the right to supervise the conduct of witnesses who are testifying. No reason is apparent from this record why the witness should have changed his position as demanded by the defendant. We find no reversible error in the action of the judge.

The only other question arises from the overruling of the motion for a new trial on the ground that the verdict is contrary to the law and evidence. We have examined the evidence, and it seems to us that it supports the verdict, which is, therefore, in accordance with law.

The judgment is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.